IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| MARTHA A. LUCAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 6:09-CV-1984-RDP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff, Martha A. Lucas, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for disability insurance benefits. Lucas timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end

this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id*. Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, the Commissioner's conclusions of law are not presumed to be valid. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Therefore, the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). This includes the Commissioner's application of the proper legal standards in evaluating Lucas's claim. *Martin*, 894 F.2d at 1529.

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations outline a five-step process that is used to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently engaged in substantial gainful activity;

(2)     whether the claimant has a severe impairment or combination of impairments;

(3)     whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]

(4)     whether the claimant can perform any of his or her past work; and

(5)     whether there are significant numbers of jobs in the national economy that the claimant can perform.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011). The evaluation process continues until the Commissioner can determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who is doing substantial gainful activity will be found not disabled at step one. 20 C.F.R. §§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found

---

[1]     The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525.

not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which will be used to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five the burden shifts to the Commissioner to show other work the claimant can do. *Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). To satisfy this burden the Commissioner must produce evidence of work in the national economy that the claimant can do based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f). A claimant who can do other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v). A claimant who cannot do other work will be found disabled. *Id.*

In the present case, Lucas seeks Title II disibility insurance benefits alleging disability beginning on December 1, 2001. R. 13. Based on Lucas's earnings records, she has sufficient quarters of coverage to remain insured through December 31, 2006. R. 14. Therefore, Lucas must establish that she became disabled on or before December 31, 2006, her date last insured. *See* 42 U.S.C. § 423(d)(1)(A); *Wilson v. Barnhart*, 284 F.3d

1219, 1226 (11th Cir. 2002). The Administrative Law Judge (ALJ) determined Lucas did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 15. Through her date last insured, the ALJ found Lucas had the severe impairments of "status post right elbow flexion contracture following radial head fracture; left L4-5 disc herniation; and lumbalgia." R. 15. The ALJ concluded Lucas did not suffer from a listed impairment through her date last insured. R. 18. The ALJ found Lucas had the residual functional capacity (RFC) to perform "the full range of light work as defined in 20 C.F.R. § 404.1567(b)" through her date last insured.[2] R. 18. With this RFC, the ALJ found Lucas unable to perform her past relevant work. R. 21. Based on Lucas's RFC the ALJ found she was not disabled based on Medical-Vocational Rule 202.20 and Rule 202.13.[3] R. 21-22. Therefore, the ALJ found she was not disabled at step five of the sequential evaluation framework. R. 22.

### III. FACTUAL BACKGROUND

Lucas filed applications for a period of disability and disability insurance benefits on December 27, 2006, and alleges she became disabled on December 1, 2001. R. 13. A

---

[2]   The regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b)

[3]   The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

hearing was held before an ALJ on July 3, 2008. R. 50. In a decision rendered July 21, 2008, the ALJ denied Lucas's claim for benefits. R. 50-59. Lucas exhausted her administrative remedies and filed this action for judicial review on October 5, 2009. (Doc. #1.) Prior to briefing by the parties, the Commissioner filed a motion to remand because the recording of the ALJ hearing was inaudible, which prevented the filing of transcript. R. 68-70. The action was remanded on January 5, 2010, for completion of the administrative record. R. 67. On remand a second hearing was conducted before the same ALJ on March 31, 2011. R. 27-44. On June 15, 2011, the ALJ again denied benefits. R. 13-22. The matter is now before the court on appeal of that decision.

Lucas was 52 years old on December 31, 2006, her date last insured. R. 21. She has a high school education, and past relevant work as a fiberglass roller. R. 21. Lucas alleges she is disabled due to back pain. R. 39.

The medical records show Lucas sustained a radial head fracture of the right elbow on December 21, 1998. R. 260. On March 24, 1999, she had surgery to treat a right elbow flexion contracture. R. 219. Treatment records from Dr. G. Scott Jones at Columbus Orthopedic Clinic show Lucas did well in therapy, and she was released for light duty work on May 18, 1999. R. 218. On June 11, 1999, it was noted that Lucas had been conscientious in her physical therapy, but Dr. Jones felt she might be in need of an additional contracture release. R. 218. Although the medical records do not document any additional surgeries, she reported she has had additional surgeries on her right

6

shoulder, and that she eventually returned to work. R. 276. Lucas worked until 2001, when she lost her job as a result of a reduction in force by her employer. R. 276.

After 1999 there are no treatment records until 2006. On May 2, 2006, Lucas was seen by Dr. Jeffrey D. Harrison, a chiropractor. R. 270. She reported a three day history of mild to moderate pain low back pain. R. 270. She reported the pain had appeared gradually, and was worsened by standing for long periods of time on hard surfaces. R. 270. An xray of the lumbar spine was normal. On May 4, 2006, Lucas reported she was experiencing less back pain since her last visit. R. 269. On May 8, 2006, Lucas reported markedly less low back pain since her last visit. R. 268. She described her symptoms as being approximately 70% improved. R. 268. On May 22, 2006, Lucas reported she had been doing well, but had a recurrence of her low back pain after she had done a lot of stooping to clean grave markers the previous day. R. 267. An MRI of the lumbar spine showed a bulging disc with facet hypertrophy and mild spinal stenosis at L3-4, and a small left disc herniation at L4-5. R. 266. Because there was no direct impingement of the nerve root, Dr. Harrison recommended nerve blocks. R. 265.

On May 23, 2006, Lucas saw Dr. Wesley L. Spruill for an epidural steroid injection. R. 227. At that time she rated her pain as a nine, on a scale of one to ten. R. 227. She returned to Dr. Spruill on May 30, 2006, for a second injection. R. 225. She reported that overall her pain was 50% better after her first injection. She rated her pain as a five. R. 225.

7

Lucas saw Dr. Harrison, on June 2, 2006, reporting that she was improving after her epidural steroid injections. R. 257. When she saw Dr. Harrison on June 6, 2006, she reported that she felt better since her last visit, and that her pain level was approximately a three. R. 256. There was also a decrease in the objective examination findings. R. 256. On June 9, 2006, she again reported that her back pain was less pronounced. R. 255. Although she still had some residual leg pain, she reported it was improving. R. 255. On June 14, 2006, Lucas reported that after doing some housework on a stool, she started having increased low back pain. R. 254. She described the pain as mild to moderate. R. 254. On June 20, 2006, Lucas reported to Dr. Harrison that she was "having much less low back pain since her last visit." R. 253. She rated her pain level as a two. R. 253. Dr. Harrison opined that Lucas was "progressing well at this point," and that her prognosis continued to be good. R. 253. When Lucas saw Dr. Harrison on June 26, 2006, she described no significant change in her low back pain since her last visit. R. 252. On June 29, 2006, she reported she was experiencing less low back pain since her last visit. R. 251. She also reported that her leg pain was slightly better. R. 251.

When Lucas saw Dr. Spruill on June 30, 2006, for her third epidural steroid injection, she stated she was 90% better after her last injection. R. 224. She rated her pain level as a two, but continued to report some radicular symptoms in her left leg. R. 224.

Lucas saw Dr. Harrison on July 12, 2006, and reported she was slightly better than prior to the injections. R. 250. She reported milder low back pain, and some left leg soreness. R. 250. It was noted that Lucas had not attempted to work since her last visit. R. 250. On July 14 and 17, 2006, Lucas reported no change in her back pain. R. 248-49. When Lucas saw Dr. Harrison on July 20, 2006, she reported less low back pain. R. 247. On July 24, 2006, Lucas reported that her back pain had been worse due to working four hours two days previously. R. 246. She reported that she had a mild increase in her low back pain and leg pain. R. 246. On July 26, 2006, Lucas reported that she was feeling better since her last visit. R. 244. She reported that her pain level had returned to the same status as before her attempt to work. R. 244. On July 28, 2006, Lucas reported no change in her low back pain since her previous visit. R. 245. Dr. Harrison believed Lucas had made all the progress that was possible under his care, and she was released from treatment. R. 245.

Lucas saw Dr. Harrison on September 28, 2006, reporting that her pain was less pronounced since her last visit. R. 243. She reported that she had a mild exacerbations of her low back pain after sitting during a revival service at church. R. 243. It was noted that her radiating pain was much less severe. R. 243. On November 28, 2006, Lucas reported she had experienced moderate right low back pain, which did not radiate. R. 242. She reported that the symptoms started two days before, with no apparent cause. R. 242. On November 30, 2006, Lucas reported to Dr. Harrison that her symptoms had

improved since her last visit. R. 241. This is the final treatment record from Dr. Harrison prior to Lucas's date last insured.

On January 2, 2007, two days after her date last insured, Lucas returned to Dr. Harrison reporting that her pain had been worse since Christmas day for unknown reasons. R. 240. She rated her pain as an eight. R. 240. On January 4, 2007, Lucas reported she was experiencing "markedly less low back pain since the last visit," and there was improvement in the objective examination findings. R. 239. On January 9, 2007, Lucas again reported that her back pain had improved since her last visit. R. 238. She also reported increased left shoulder pain, which she rated as moderate to severe. R. 238. On January 15, 2007, Lucas reported an exacerbation of her left shoulder pain. R. 236. An x-ray of the shoulder was normal. R. 237. On January 18, 2007, Lucas reported that her shoulder pain had remained unchanged since her last visit. R. 235. On January 22, January 25, January 30, February 1, and February 6, 2007, Lucas saw Dr. Harrison for treatment of her shoulder pain. R. 296-301. At each of these visits Lucas reported that her shoulder pain had improved, and there was no mention of back pain. On February 8, 2007, Lucas reported her shoulder pain was unchanged. R. 301. On February 19, 2007, Lucas reported to Dr. Harrison that she was experiencing moderate lumbosacral pain with radiation into her right thigh after "helping at the cleaning business" the previous week. R. 302. At her next visit on February 22, 2007, Lucas reported her pain had improved. R. 303.

Lucas was also seen during the relevant time period by Dr. Travis Miller, her primary care physician. On February 16, 2006, Lucas reported that she had been doing fairly well overall, with no myalgias. R. 373. On August 7, 2006, she saw Dr. Miller for refills of her medicines. R. 372. Dr. Miller saw Lucas for an adverse reaction to her medications on August 21 and August 28, 2006. R. 370-71. On December 28, 2006, Lucas returned to Dr. Miller for refills of her blood pressure medications. R. 369. At this visit it was noted Lucas "has had a lot of osteoarthritic back pain," which was noted to be a chronic problem. R. 369. The treatment note states that she was "not taking anything on a regular basis" for her osteoarthritis pain, and Dr. Miller prescribed Mobic. R. 369. On February 26, 2007, Lucas saw Dr. Miller complaining of sinus congestion. R. 368.

The record contains additional treatment records from the period after Lucas's date last insured. However, those notes are not relevant to her condition prior to her date last insured.

On February 7, 2007, Lucas underwent a disability examination by Dr. Boyde J. Harrison. R. 276-78. Dr. Harrison noted Lucas walked into the exam room without difficulty. R. 277. On musculoskeletal examination, Dr. Harrison found Lucas had reduced range of motion in her shoulders. R. 278. She was able to squat, but had difficulty arising. R. 278. She had a reduced range of motion in her lumbar spine. R.

278. Straight leg raise testing was negative, and her hips flexed normally. R. 278. Dr.

Harrison's diagnostic impression was as follows:

1)    Patient has painful posttraumatic right elbow with decreased range
      of motion and crepitation during the range of motion.

2)    Patient has pain and decreased range of motion in her left shoulder.

3)    Patient has low back pain and has previously had three epidurals.

R. 278. Dr. Harrison was of the opinion that Lucas "will not be able to return to physical

manual labor as she has previously performed in her previous jobs." R. 278.

On August 15,2008, Dr. Harrison, the plaintiff's treating chiropractor, completed

a Physical Capacities Evaluation indicating Lucas could lift ten pounds occasionally or

less frequently. R. 374. He also limited Lucas to standing and walking for a total of

three hours in an eight-hour day. R. 274. Dr. Harrison also completed a Clinical

Assessment of Pain form indicating Lucas's pain would "be distracting to adequate

performance of daily activities or work." R. 375.

## IV. ISSUES PRESENTED

Lucas raises the following issues on appeal: 1) whether the ALJ failed to properly

evaluate her complaints of pain in accordance with the Eleventh Circuit's pain standard;

2) whether ALJ failed to properly articulate good cause for according less weight to the

opinions of her treating chiropractor; and 3) whether the ALJ failed to properly consider

her impairments in combination.

# V. DISCUSSION

## A.

Lucas argues the ALJ erred in failing to credit her allegations of disabling pain. In this Circuit a "pain standard" is applied "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The standard requires a claimant to show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F. 2d 1551, 1553 (11th Cir. 1986). "[W]hether objective medical impairments could reasonably be expected to produce the pain complained of is a question of fact . . . subject to review in the courts to see if it is supported by substantial evidence." *Id.*

"[A] claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.* However, the ALJ's credibility determination need not cite "particular phrases or formulations" as long as it enables the court to conclude that the ALJ considered the claimant's medical condition as a whole. *Foote*, 67 F.3d at 1562. "A clearly articulated credibility finding with

substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.*

Lucas argues the treatment notes from Dr. Spruill and her chiropractor, Dr. Harrison, support her allegations of disabling pain. The ALJ discussed these treatment notes in his decision and found they showed that Lucas's pain improved with treatment.[4] R. 19.

The ALJ noted that there were no treatment notes from 1999 until May 2, 2006, when Lucas saw her chiropractor with a three day history of low back pain. R. 19. However, the ALJ observed Lucas reported her pain was "approximately 70% improved" when she returned on May 8. The ALJ also noted that after Dr. Spruill performed epidural steroid injections, Lucas "rated her pain intensity as being 2/10 and she admitted she was 90% better." R. 20. The ALJ discussed Dr. Harrison's treatment notes, which showed Lucas reported on September 28, 2006, she had "a mild exacerbation of her low back pain that had occurred after sitting during a church revival." R. 20. He also observed Dr. Harrison noted on November 28, 2006, that the plaintiff reported "a two-day history of moderate right lower back pain," and that she felt better after chiropractic adjustment. R. 20. Finally, the ALJ noted the plaintiff reported

---

[4]   There is a treatment note from Dr. Miller dated February 16, 2006. R. 373. However, it was for a check up of Lucas's hypertension and hyperlipidemia. R. 373. She reported she was doing fairly well and there is no mention of back or elbow pain. R. 373.

14

"she was experiencing markedly less low back pain" when she saw Dr. Harrison on January 4, 2007. R. 20.

Therefore, the treatment notes show that prior to her date last insured, her complaints of significant pain were infrequent. Those note show Lucas responded well to treatment, and frequently rated her pain as mild or moderate. Therefore, the treatment notes provide substantial evidence to support the ALJ's credibility determination.

Lucas also argues the ALJ placed undue influence on her daily activities, and work history in finding her pain allegations were not credible. The ALJ found Lucas's credibility was diminished because she was able to return to work after surgery for her elbow injury in 1999. R. 20. The ALJ noted she worked until there was a reduction in work force and she was the first one to go. R. 20. The ALJ reasoned that "[t]he fact that the impairment did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work." R. 20. The ALJ's reliance on Lucas's work history to find that her elbow impairment did not cause disabling symptoms during the relevant period of time (December 1, 2001 to December 31, 2006) is reasonable in light of the absence of treatment for that condition.

The ALJ also found Lucas's testimony "that she was able to do light housework, cook meals, shop in grocery stores, go to church and attend church revivals" diminished the credibility of her allegations of disability. R.20. The ALJ found Lucas's activities were "not limited to the extent one would expect based on the claimant's allegations of

disabling pain and dysfunction." R. 20. Lucas correctly points out that"participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1346, 1441 (11th Cir. 1997). However, the ALJ did not rely solely on Lucas's activities of daily living to find her not disabled. The ALJ properly considered Lucas's activities of daily living as one factor in his credibility determination. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (approving of ALJ's reliance on inconsistencies between claimant's descriptions of diverse daily activities and her claims of infirmity to discredit her pain testimony); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (finding the ALJ's consideration of claimant's activities of daily living, frequency of his symptoms, and types and dosages of his medications was adequate to discredit his testimony).

Here, the ALJ considered Lucas's  activities of daily living, the frequency of her symptoms, and the effectiveness of treatment to find her pain testimony was not credible. Substantial evidence in the record supports the ALJ's finding, as the medical evidence shows Lucas reported symptoms infrequently and that treatment was effective in relieving her pain during the relevant time period. *See Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (approving of ALJ's reliance on claimant's activities of daily living, limited use of pain medication, and effectiveness of treatment to discredit his pain testimony).

16

As required by the Eleventh Circuit pain standard, the ALJ articulated specific reasons for discounting Lucas's testimony of disabling symptoms and those reasons are supported by substantial evidence. This court cannot reweigh the evidence. There is no reversible error in the ALJ's credibility finding.

## B.

Lucas also argues the ALJ failed to properly articulate good cause for according less weight to the opinions of her treating chiropractor, Dr. Harrison. On August 15,2008, Dr. Harrison completed a Physical Capacities Evaluation indicating Lucas could lift ten pounds occasionally or less frequently. R. 374. He also limited Lucas to standing and walking for a total of three hours in an eight-hour day. R. 274. Dr. Harrison also completed a Clinical Assessment of Pain form indicating Lucas's pain would "be distracting to adequate performance of daily activities or work." R. 375.

Chiropractors are not acceptable medical sources for establishing the presence of a medically determinable impairment. *See* 20 C.F.R. § 404.1513(a) (listing acceptable medical sources). Nor may a chiropractor render a medical opinion. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments. 20 C.F.R. § 404.1527(a)(2). However, once medical evidence establishes the presence of a medically determinable impairment, the opinions of a chiropractor may be utilized to show how a claimant's impairment affects her ability to work. 20 C.F.R. § 404.1513(d)(1). Even though a chiropractor's opinions may be considered, "an ALJ has no duty to give

significant or controlling weight to a chiropractor's views." *Miles v. Soc. Sec. Admin.* 469

F.App'x 743, 745 (11th Cir. 2012)(unpublished).

Here, the ALJ considered the opinion of Dr. Harrison, but gave it little weight. R.

21. The ALJ gave the following reasons for his decision:

> Mr. Harrison's opinion is not supported or explained, nor is it consistent
> with the record. Moreover, it appears that Mr. Harrison's opinion is based
> almost entirely on the claimant's subjective complaints, which, for the
> reasons explained above, are considered less than credible.

R. 21. Substantial evidence supports the ALJ's finding that Dr. Harrison's opinion is

inconsistent with the medical evidence of record during the relevant period of time. The

medical evidence through December 31, 2006, which the ALJ discussed in detail, shows

Lucas's impairments responded well to treatment, and that she reported very little pain

after her initial visit to Dr. Harrison on May 2, 2006. *See Crawford v. Comm'r Of Soc.*

*Sec.* 363 F.3d 1155, 1160 (11th Cir. 2004) (finding ALJ's decision to discredit a treating

chiropractor was supported by substantial evidence when the opinion was inconsistent

with his own treatment notes).

## C.

Lucas's final argument is that the ALJ failed to properly consider her impairments

in combination. When a claimant has several impairments, the Commissioner "has a duty

to consider the impairments in combination and to determine whether the combined

impairments render the claimant disabled." *Jones v. Department of Health and Human*

*Services*, 941 F.2d 1529, 1533 (11th Cir. 1991). Here, a review of the ALJ's decision

shows that he was aware of his obligation to consider Lucas's impairments in combination, and that he did so in his consideration of the evidence.

The ALJ recognized this obligation in his consideration of whether Lucas had a "severe" impairment. "[T]he undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." R. 14. In finding Lucas had the severe impairments of "status post right elbow flexion contracture following radial head fracture; Left L4-5 disc herniation; and lumbalgia," the ALJ stated that this "combination of impairments cause more than minimal limitation in claimant's ability to perform basic work activities and will be discussed in more detail below." R. 15-16. He also recognized that Lucas's combined impairments must be considered in determining whether she met a Listing. R. 14. He found that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments." R. 18. In *Jones* the court held the ALJ's finding that Jones "does not have 'an impairment *or combination of impairments* listed in, or medically equal to one [in the Listings]'" was sufficient evidence to show the ALJ had considered the combined effect of his impairments. *Id.* In assessing Lucas's RFC, the ALJ recognized that he "must consider all of the claimant's impairments, including impairments that are 'not severe.'" R. 14-15. He stated that in making his RFC finding, he "considered all symptoms." R. 18.

This is not a case such as *Walker v. Bowen*, where the ALJ did not mention many of the claimant's impairments. 826 F.2d 996, 1001 (11th Cir. 1987) (finding the ALJ did

not consider the combination of claimant's impairments before determining her RFC

when he made specific reference to only two impairments and failed to mention five other

impairments except to find they did not establish disabling pain). In the present case,

there is ample evidence showing the ALJ considered all of Lucas's impairments and their

combined impact on her ability to perform work related activities. Therefore, he did not

fail to properly consider Lucas's impairments in combination. *See Macia v. Bowen*, 829

F.2d 1009, 1012 (11th Cir. 1987) (finding the ALJ considered the claimant's combined

impairments because of his lengthy consideration of those conditions and his well

articulated findings as to their effect on the claimant).

## VI. CONCLUSION

The court concludes the ALJ's determination that Lucas is not disabled is

supported by substantial evidence, and that the ALJ applied the proper legal standards in

arriving at this decision. Accordingly, the Commissioner's final decision is due to be

affirmed. An appropriate order will be entered.

**DONE** and **ORDERED** this _____31st_____ day of January, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

20